# MICHAEL THOMAS HORNER.

*vs.*

# WILLIAM H. ROWE.

*Negligence—Automobile Collision.*

In an action on account of an injury to plaintiff's arm, received while he was sitting in a crowded automobile truck, as a result of defendant striking the truck while passing in his automobile, *held* that the questions of defendant's negligence and plaintiff's contributory negligence were for the jury.

p. 666

One cannot on appeal complain that he was injured by prayers granted at his instance.                    p. 668

*Decided January 10th, 1922.*

Appeal from the Circuit Court for Baltimore County (PRESTON, J.).

Action by William H. Rowe against Michael Thomas Horner. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, and OFFUTT.

*Shirley Carter,* for the appellant.

*Oliver Y. Harris* and *E. M. Sturtevant,* with whom was *Noah E. Offutt* on the brief, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is a suit for personal injuries brought by William H. Rowe, the appellee, against Michael Thomas Horner, the appellant, in the Circuit Court for Baltimore County.

The case, after trial, resulted in a verdict and judgment for the plaintiff, and the defendant has appealed.

The record contains but one exception and that presents the correctness of the rulings of the court on the prayers and on the defendant's special exception to the plaintiff's first prayer.

The court granted the plaintiff's first and only prayer, which was the usual damage prayer in such cases, and also granted the defendant's fifth, sixth, eight and ninth prayers. The defendant's first, second, third, fourth and seventh prayers were rejected, and his special exception to the plaintiff's first prayer was overruled.

The declaration contains one count, and this alleges that, at the time of the accident, the plaintiff was a passenger in an automobile truck which was being driven along a public highway known as the Lake Shore Road, in Anne Arundel County, and the defendant, or his agent or servant, who was then driving an automobile along the road, drove it so negligently that it struck the automobile truck in which plaintiff was riding, whereby the plaintiff was seriously and permanently injured about his body and limbs, his right arm being fractured and the muscles and ligaments in his right shoulder and side being torn; that plaintiff has been and will be prevented in the future from following his business, and has incurred expense in endeavoring to be cured, and will be required to incur additional expense in the future, that the injuries were caused solely by the negligence of the defendant, and without any negligence on the part of the plaintiff directly contributing thereto.

The material facts of the case, in addition to those set out in the declaration, briefly stated, are: On the 22nd of August, 1920, the plaintiff and fifteen others were riding in a Ford truck on a public road, known as the Lake Shore Road, leading from the Annapolis Road to the Magothy River, in Anne Arundel County, and on their way to Camp Broening, near the river. The evidence shows that the plaintiff was seated on the left side of the truck, just behind the driver and resting against the first stay, on the inside of the

truck, with his back against the stay, and that his arms were inside the truck. The other passengers occupied seats placed lengthwise along the side of the truck and on boxes in the center of the truck. The automobile truck was going south, on the right hand side of the road, and travelling at a speed of about eight or ten miles per hour, and when it approached within fifty yards, or one hundred and fifty feet, of a bend or curve in the road, an automobile driven by the appellant came around the bend or curve, running at a speed of about thirty-five miles an hour, being on the wrong side of the road and headed directly toward the automobile truck. The automobile struck the truck at the point where the appellee was sitting, whereby the plaintiff was seriously injured about his right arm and shoulder.

The witness, White, who was driving the automobile truck, testified that he had to run off the road to try to avoid a collision, and when the driver of the automobile saw him he tried to avoid it too. He cut to his right and the rear of his car hit the top standard of the truck, and it was done so quickly that he didn't think anybody was hurt, until Mr. Rowe, who was sitting at his back, fell over on his back unconscious for a moment or two. He testified further as follows: "Q. Now did you receive any notice that the car was rounding the turn? A. Not until it made the turn, and of course the noise of the motor and exhaust from the rate of speed he was travelling, I knew it was a car coming. Q. You first saw him then as he rounded the turn? A. Rounded the turn. He didn't give any signal or blow any horn or anything. I didn't see him until he was right on us and it looked like he was coming right head on us. Q. Looked like a head-on collision? A. Looked like a head-on collision. Q. And he swerved out? A. And he swerved out. If he was coming at a moderate rate of speed he could have made the turn, and I would not have had to change my position on the road, and he could have passed. Q. Where was your truck when the collision occurred? A. On the side of the road. He ran me off the road. Q. You ran off in the dirt portion? A. I ran

off in the dirt portion and the wheels sunk down into four inches of dirt. Q. Now, what did the automobile do after the collision? A. Why the last I heard of him, he was going so fast, why, nobody knows what he did do, only go. Q. He didn't stop? A. No."

The plaintiff testified that he was sitting in the truck, at the time of the accident, on the left side thereof, behind the chauffeur, and resting against the stay or support which holds the top up, and his wife was sitting next to him; that he was struck and knocked unconscious, but did not see the automobile coming or when it struck the truck, as he was looking out the other side of the road, in another direction; that he was inside the truck and no part of his body extended beyond the truck, and that both of his arms were inside the truck. He further testified that his right arm was broken by the collision, and that he was taken to the Maryland General Hospital for treatment, where he remained for four weeks; that he had not been able to work since the accident and had no use of his right arm.

Miss Virginia Rowe, a daughter of the plaintiff, who was present when the accident occurred, testified in part that she was sitting in the middle of the truck, and that her father was sitting directly opposite to her, with his back to the side of the truck; that she saw the car coming around the curve and "it was coming at a terrific rate of speed and it looked as if it was going directly through the front of our truck." There was no horn blown, nor anything to indicate the approach of the car. "Q. And when he came around the curve what portion of the road way was his machine occupying? A. He was on the extreme left; looked like he was coming right through the front of our machine. Q. And then what did he do? A. He tried to pull to the right and he did get the front out of the way of ours, but the back of his machine struck this iron piece that struck my father's arm. Q. When the collision occurred what happened to your father? A. Well, at first he was very quiet, we didn't know whether he was conscious. He didn't say anything. We spoke to him but he

didn't answer, and my mother said he was hurt and we looked and his arm was dangling and there was blood and the sleeve was torn. When Mr. Horner's car struck us there was a crash, and I think most of the women in the machine, there was five or six at least, and I think most of them made some sort of a noise, they hollered. Q. And what did Mr. Horner do when the collision occurred? A. He kept on going. I looked to the back of the machine and I saw him going down the road. His top was torn. Q. What was the appearance of his machine when it was going down the road? A. He was going down just as fast as he came. Q. And was there anything about it that attracted your attention when he went away? A. Yes, I noticed his top was torn loose and was flying and it was on the left side."

She further testified that she recognized the defendant as the person who was driving the car, at the time of the collision, and was positive that it was the defendant, and not his brother.

Mrs. Rowe, the wife of the defendant, who was sitting next to her husband, and on the left hand side of the truck, testified: "We saw Mr. Horner's car come around the curve right to the left at a break-neck speed, and we thought he was going straight through the car, and I said, 'Oh, look at this,' and almost by the time I got the words out of my mouth he had struck us, and I noticed that Mr. Rowe looked very strange, and he fell over and I said, 'Oh, they have struck your father,' and we all screamed; I know I screamed; and Mr. Rowe said, 'My arm is broken.' Q. Now, when the automobile struck the truck was there any noise? A. There was a crash you know and there was a jar. I know I was bruised a little from it, and Mr. Rowe's niece, who was sitting next to me, was bruised. Nothing much, but we were bruised nevertheless."

She also testified that she visited the home of the defendant, with her daughter and Mr. Langford, after the accident, and the defendant admitted he was driving the automobile

at the time of the collision and that it was his car, and he was sorry for it.

There were six other witnesses called and examined on the part of the plaintiff, but as their testimony is somewhat similar to that of the plaintiff and his other witnesses on the main facts, we do not consider it necessary, for the purposes of the case, to review it, or to discuss it at length.

There were five witnesses examined on the part of the defendant, and as the substance of their testimony is correctly stated in a summary or addendum to the appellant's brief, we set it out here.

John Horner, defendant's brother, testified that he was driving the automobile; and saw the truck one hundred and fifty feet ahead; did not hear any noise as he passed; was going at the rate of twenty miles an hour; and there was fully a foot space between the front fenders and wheels of the automobile and truck when he passed; he saw the flap of the top, and that the tacks were pulled out when he got to Lake Shore; and thought, may be, it had been done by the branch of a tree.

George W. Hoopes testified that he was sitting on the front seat beside John Horner in the defendant's automobile, and that John Horner was driving the car; and that when they came around the curve they were going eighteen to twenty miles an hour, and they did not increase their speed. He did not hear any swish or noise as they passed the truck; there was no difficulty in passing; the defendant was sitting on the back seat; he also noticed the flap of the top and that the tacks were pulled out at Lake Shore; that the cut of the automobile, Exhibit No. 1, was a good representation of the top of the automobile; that the leather was not torn, tacks just pulled out.

William T. Collins testified that he examined the truck a few days after the accident, and did not see any marks on the truck. There was a screw or bolt out of the iron strap or rod at the middle stanchion on the left side, and also a new bolt or screw in the strap or rod on the right side of the

truck; that the fenders were not injured in any way; that the breadth of the front stanchion would be ten inches.

The defendant testified that he remembered passing the truck, but did not see it, but when he got to Lake Shore, he noticed that the cover of the automobile had been torn, and some tacks had been pulled out of the car; that he did not hear any noise when he passed the truck but he knew he had hit something just after rounding the curve in the road. He further testified that the car belonged to him, but he was not driving it, at the time of the accident; that the car was being driven by his brother, John Horner, that one John Hoopes was on the front seat, with the driver, and that he was sitting in the rear of the car.

We have recited the testimony somewhat at length because we are of opinion that the evidence in this case was legally sufficient to require the case to be submitted to the determination of a jury, upon the whole evidence disclosed by the record, and it would have been reversible error for the court to have granted the defendant's first, second, third, fourth and seventh prayers.

These prayers, it will be seen, in effect asked the court to instruct the jury, as a matter of law, first, that there was no evidence legally sufficient from which the jury could find that the injury to the plaintiff was caused solely by the negligence of the defendant, and secondly, that upon the uncontradicted and undisputed evidence in the case, the plaintiff so directly contributed to the accident, resulting in the injuries complained of, by his own negligence, that there can be no recovery in this case against the defendant and their verdict must be for the defendant.

The question of negligence *vel non,* on the part of the defendant, was one properly for the jury, under the facts of the case, and as there was a conflict of evidence, the question of whether the plaintiff was guilty of contributory negligence was also one for the jury and not a question for the court to determine, as a matter of law. *Winkelman & Brown* v. *Col-*

*laday,* 88 Md. 91; *Burke* v. *Baltimore,* 127 Md. 561; *Biggs* v. *Baltimore,* 129 Md. 690.

The rules of law controlling the disposition of cases where the questions of negligence and contributory negligence are involved, have been so often and so recently announced and applied by this Court, that it becomes unnecessary to discuss them. A mere reference to some of the recent cases will be sufficient to establish the general rule, controlling in similar cases. *Waltring* v. *James,* 136 Md. 406; *Wingert* v. *Cohill,* 136 Md. 399; *Buckey* v. *White,* 137 Md. 124.

The theory of the defendant's case, that the plaintiff's arm was struck and injured by the passing automobile, while his right arm and elbow extended beyond the left side of the truck, was clearly submitted and presented to the jury by the defendant's fifth and sixth prayers, although the uncontradicted evidence of the plaintiff and his wife was that his arm and body were inside the truck, at the time of the collision.

By the defendant's fifth granted prayer the jury were instructed "that if they find from the evidence in this case that the plaintiff's arm was struck and injured by any part of the automobile of the defendant while the plaintiff's arm was protruding or extending beyond the side of the automobile in which he was riding, then the verdict of the jury must be for the defendant, there being no evidence in this case legally sufficient from which the jury can find that the plaintiff's arm was caused to protrude or extend beyond the side of the automobile in which he was riding by any act or negligence on the part of the defendant."

By the sixth granted prayer, the court instructed the jury, "that if they find from the evidence in case that the plaintiff either voluntarily or inattentively protruded his right arm or elbow beyond the left side of the truck, mentioned in the evidence, in which he was riding; and that while so protruded the plaintiff's right arm or elbow was struck by the automobile of the defendant (39 Md. 350) mentioned in the evidence, while the said truck and automobile were passing on the road mentioned in the evidence; then, under the plead-

ings in this case, the verdict of the jury must be for the defendant; even although the jury find from the evidence that the defendant was driving the automobile and was driving the same negligently."

While we do not approve of the law submitted by the defendant's fifth and sixth prayers, as applicable to the facts of the case, they were however granted at the instance of the defendant, and he cannot be heard to complain, as having been injured thereby.

There was conflict in the evidence, as to who was driving the automobile at the time it passed the automobile truck, and at the time of the accident, and it is conceded that this question was properly left to the jury by the defendant's eighth and ninth granted prayers.

There was clearly no error in the action of the court in overruling the defendant's special exception to the plaintiff's first prayer. The prayer was the usual damage prayer in such cases, and there was evidence legally sufficient to support the prayer.

Finding no reversible error in the rulings of the court, of which the defendant can complain, the judgment will be affirmed.

*Judgment affirmed, with costs in both courts to the appellee.*