## PRECISION DEVELOPMENT CO. *v.* FAST BEARING CO.

[No. 27, April Term, 1944.]

400

*Decided June 13, 1944.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, and CAPPER, JJ.

Hilary W. Gans, with whom were Joseph T. Brennan and Stanley G. Robins on the brief, for the appellant.

F. W. C. Webb, with whom were Woodcock, Webb, Bounds & Travers on the brief, for the appellee.

CAPPER, J., delivered the opinion of the Court.

In this case the Fast Bearing Company, a Maryland corporation, the appellee, brought suit against the Precision Development Company, a Maryland corporation, appellant, in the Circuit Court for Wicomico County, Maryland. The declaration was based solely upon the common counts, but upon demand by the appellant, appellee filed a bill of particulars setting forth a list of machinery, machine tools, motors, etc., referred to in invoices Nos. 1 to 66, inclusive, and set prices opposite each item. The bill of particulars also included an itemized statement of various kinds and quantities of steel with prices opposite thereto. These invoices amounted to a total claim of One Hundred Twenty-nine Thousand Two Hundred Twenty-three Dollars and Eighty-one Cents with interest thereon.

Appellant pleaded the general issue pleas and by a third plea set up the existence of a contract dated March 23, 1942, between the parties for the sale and delivery of all of the property. Appellee by its replication to the said third plea denied that any part of the contract was now in existence or provided any defense to this action, and issue was joined thereon.

Upon trial of the case before a jury, a verdict was rendered for appellee in the sum of Ninety-eight Thousand Four Hundred Thirty-nine Dollars and Forty-one Cents, and judgment was entered for this amount. Appellant appeals therefrom.

This appeal involves twenty-three exceptions, twenty-two of which were made to the rulings of the Court upon the evidence as presented and the twenty-third to the rulings upon the prayers.

The appellee offered in evidence the agreement of sale. It provided, in brief, for the sale and delivery of the machinery, machine tools, electric motors, the manufacturing, testing and research equipment and other articles listed in Schedule "A" attached thereto free of liens etc., appellant to accept delivery at Salisbury, Maryland, of such of the same as were adaptable to its manufacturing methods; that adequate insurance coverage approved by appellee should be paid for by appellant. It further provided that appellant agreed to pay Ten Thousand Dollars within thirty days of the date of the agreement. The price was to be determined by deducting from the original capital cost to appellee at the time of acquisition, the allowable amortization thereon at the rate of six and one-half per cent (6½%) from the date of acquisition to the date of delivery.

Sub-paragraph B of paragraph three provided that the balance of the purchase price "shall be paid in equal annual installments on the first day of December of each calendar year," the amount of each installment to be fixed as provided in the agreement, which appellant claims resulted in five equal installment payments.

There was also a provision that appellant should execute and deliver to appellee its note or notes secured by a chattel mortgage or otherwise, to evidence the amount and secure the payment of the installments of the balance of the value of the property.

Paragraph five of the agreement provided for the sale and delivery of the raw materials listed in Schedule "B" attached to the contract to be delivered and accepted not later than thirty days from the date thereof and that appellant pay appellee the far market value of said materials at the time of delivery and issue purchase orders therefor at the time of delivery, payable ten days net.

The sixth and last paragraph provided that if appellant elected to surrender an exclusive license agreement entered into on the same date with appellee within thirty days from the date of said agreement, it should have

the right likewise to cancel the agreement of sale and terminate all obligations and liabilities between the parties.

Gustav Fast testified on behalf of the appellee concerning the sale of the machinery, tools, and steel covered by the contract. He testified specifically about invoice No. B-62, which included a lot of special small tools, slitting saws, high speed form cutters and many other tools and machinery, part of which were manufactured by appellee and which will hereafter be discussed in connection with the rulings of the trial court. He said that the machinery and equipment sold was for the purpose of manufacturing Fast Bearings and Couplings and the steel was especially adapted for this purpose. His testimony showed that he had many years' experience in the engineering and manufacturing of Fast Bearings and Couplings. It also disclosed that appellant had accepted delivery of all of the items of machinery and equipment, tools, etc., refererd to in the contract, upon which only Ten Thousand Dollars of the purchase price had been paid in May, 1942. He further stated that some of the machinery had been sold by appellant to certain machinery concerns, but no part of the proceeds of these sales had been paid appellee; also that appellee had never received any notes or any chattel mortgage from appellant in accordance with the contract, and that the contract was never cancelled as provided in paragraph six thereof.

He further testified that appellee had not failed or neglected in any respect to comply with every term of the contract. Witness showed that he was familiar with the fair market prices of the steel during the year 1942, and gave testimony concerning the same.

Other witnesses testified for appellant and appellee concerning the original capital cost of the items listed in Schedule "A" and the fair market value of the raw materials set out in Schedule "B." There is no dispute between the parties as to delivery of all of the property and no dispute about the prices for the property men-

tioned in Schedule "A" excepting Invoice B-62. A controversy concerning Invoice B-38 was abandoned by appellant. It is also shown that no insurance was provided in accordance with the contract, that the first payment of Ten Thousand Dollars was not made in accordance therewith, and that appellant sold a considerable amount of the property and did not give its note or notes secured by a chattel mortgage to secure the payment of the purchase price of the items set forth in Schedule "A."

The twenty-third exception involves the rulings of the lower court upon the prayers. These rulings will first be considered, inasmuch as a decision upon them will make unnecessary a long discussion of the exceptions to the evidence.

The granting of the first prayer of appellee cannot be seriously questioned. It recited the sale and delivery of the raw material or steel referred to in Schedule "B" of the Agreement upon which no part of the purchase price had been paid. There was no question that the steel had been delivered and accepted by the appellant and this prayer instructed the jury that appellee was entitled to recover the fair market value of said raw materials or steel at the time of delivery, together with interest in the discretion of the jury. There was no dispute about any of the facts detailed in this prayer excepting the question of the fair market value and this was properly left to the jury for its decision.

Appellee's second prayer related to the machinery and equipment described in Schedule "A" of the agreement. It instructed the jury that if they found appellant had breached the agreement of sale, it was no longer entitled to pay the installments provided in said Agreement and as there was no dispute about the sale and delivery of the property, appellee was entitled to recover in a lump sum whatever purchase price of said machinery and equipment the jury shall believe from the evidence represented the original capital cost to appellee of the same at the time of its acquisition thereof, less amortization

at the rate of six and one-half per centum from the date of such acquisition to the date of delivery, less such amount as the evidence showed had been paid thereon, together with such interest as the jury might see fit to allow.

The objection of the appellant to this prayer is that it permits a recovery of the entire amount due upon Schedule "A" in a lump sum instead of installments.

Section 81 (1) Article 83 of the Annotated Code of Maryland, 1939, entitled "Sales and Notices," provides as follows:

"Where, under a contract to sell or a sale, the property in the goods has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain an action against him for the price of the goods."

The controversy between the parties as to the original capital cost of the items listed in Schedule "A" and also the fair market value of the steel in Schedule "B" is relied upon by appellant for its failure to comply with the contract. This, however, did not in any manner prevent the prompt payment of the Ten Thousand Dollars heretofore referred to, and would not justify the appellant in any long delay in making a bona fide effort to arrive at these values and tender or pay same according to the contract. There was no effort made to insure the property or provide the notes and chattel mortgage thereon. Portions of the property were disposed of by appellant. The sale of this property made the obligation of appellant to give a chattel mortgage thereon impossible. This constituted a distinct repudiation of the contract. These things, we think, furnished ample evidence upon which the jury could find that the contract had been breached by appellant. The appellee had delivered all of the property and had done everything it could do to complete the contract. The failure of appellant to give the mortgage deprived appellee of its only right to be secured in the payment of the purchase price.

Where a contract has been breached in such manner as this, it has been held by many courts that the breach authorized a recovery of the entire unpaid balance of the purchase price. *Gibson v. Miller,* 215 Iowa 631, 246 N. W. 606; *Cook v. Stevenson,* 30 Mich. 242; *Foster v. Adams,* 60 Vt. 392, 15 A. 169; *Wheeler v. Harrah,* 14 Or. 325, 12 P. 500; *Smith v. Aldrich,* 180 Mass. 367, 62 N. E. 381; *Rumsey v. Livers,* 112 Md. 546, 77 A. 295; *Kahn v. Schleisner,* 165 Md. 106, 166 A. 435; *Williston* on *Contracts* (1937 Ed.), Sec. 1411, at page 3933; *Crooker v. Holmes,* 65 Me. 195, 20 Am. Rep. 687.

In the case of *Gibson v. Miller,* supra, the Supreme Court of Iowa held in a suit for the purchase price of a tombstone, where the contract provided one-half of the same was due on delivery and the balance within six months, the action for the full amount was not premature where the tombstone was furnished and tendered to buyer and refused.

We do not understand that this rule of law is questioned by appellant, but it contends that appellee cannot recover the lump sum upon the common counts. No Maryland cases are cited to support this principle of law, but some cases from other jurisdictions recognize it.

There is no doubt about the right of appellee to bring suit in this case upon the common counts alone, because it had fully performed all its obligations under the contract and nothing remained to be done except the payment of the purchase price. The appellant claims that the contract must govern so far as installment payments are concerned. We think in a suit of this kind upon the common counts that the contract is introduced in evidence only for the purpose of fixing the amount of compensation. That amount was provided in the contract as payable in installments and the contract having been breached and repudiated by appellee as aforesaid, the entire amount was due.

The lower court confined appellee in its recovery to the amount of compensation as ascertained by the jury in the manner provided in the contract, and in this we

agree. We think the Maryland Statute, above quoted, and the authorities hereinafter referred to, sustain the proposition that where the contract is breached and the other party has fully performed in every way, he can recover the full amount under the common counts, without including a special count upon the contract as nothing remained to be done but the payment of the money by the defendant. *William Weil et al., Ancillary Administrators of Meyer Gutman, v. Edward Lambert,* 183 Md., 37 A. 2d 312; *Southern Bldg. & Loan Association v. Price,* 88 Md. 155, 41 A. 53, 42 L. R. A. 206; *City & Suburban Rwy. v. Basshor,* 82 Md. 397, 33 A. 635; *Rumsey v. Livers,* supra; *Devecmon v. Shaw and Devries Executors,* 69 Md. 199, 14 A. 464, 9 Am. St. Rep. 422; *Bright v. Ganas,* 171 Md. 493, 189 A. 427, 109 A. L. R. 467, 4 Am. Jur. 530; *Foster v. Adams,* supra.

In *Foster v. Adams,* supra, it was held that where the buyer had taken possession of the property, and the title thereto had vested in him, his refusal to give his notes therefor secured by mortgage, as promised, was a waiver of the time in making his payments and entitled the plaintiffs immediately to their action in general assumpsit for the goods sold and delivered.

The amount to be paid under the contract was the full amount due after it had been breached and repudiated. In the case of *Conservation Company v. Stimpson,* 136 Md. 314, 110 A. 495, 496, Chief Judge Boyd held that, "under our established practice there can be a recovery under the common counts applicable where there is a special contract, provided the plaintiff has performed his part of the contract, and nothing remains but to collect what is due by the defendant." For these reasons, we hold that a recovery in this case upon the common counts alone for the entire amount due and payable as ascertained from the terms of the contract was proper and that appellee's second prayer based upon this theory is a correct statement of the law.

Appellant's 1-A prayer seems to be not inconsistent with appellee's second prayer. After recitng the facts,

it stated that the jury should determine from the evidence the original capital cost of the machinery, etc., and the fair market value of the steel as of the date of delivery. The prayer then provided that "the verdict of the jury should therefore be in such amount as represents the sum total of the unpaid purchase price of the machinery, tools and equipment due December 1st, 1942, plus interest in the discretion of the jury from said date, and the amount found to represent the fair market value of the steel plus interest on said amount in the discretion of the jury from January 2nd, 1942, to date."

It will thus be seen that this prayer calls for a verdict for the sum total of the unpaid purchase price of the property just as appellee's second prayer requires a verdict in a lump sum.

Appellant's first prayer was in practically the same language as its 1-A prayer excepting it required the jury to render a verdict in such amount as represents the sum total of the amount of the installment of the unpaid purchase price of the machinery, tools, and equipment due December 1, 1942. In this respect it was, of course, wholly inconsistent with appellant's 1-A prayer, and the lower court could not possibly have granted both prayers. It granted the 1-A prayer and rejected the first prayer.

Appellant's second prayer also proceeded on the theory that the verdict of the jury should be for the unpaid installment of the purchase price of the machinery, tools, and equipment due December 1, 1942. This prayer was also rejected. Appellant's 2-A prayer was in most respects similar to its 1-A prayer and again required the jury to find the total amount of the unpaid purchase price due on machinery, tools, and equipment December 1, 1942. It was practically a duplication of appellant's 1-A prayer and was properly rejected by the Court.

Appellant's theory of offering these inconsistent prayers is that they were drawn in the alternative and to be ruled upon only in event that the Court should decide that appellee was entitled to the full purchase price. Appellant cites no authority for the offering of such in-

consistent prayers excepting the case of *Weitzel v. List,* 161 Md. 28, 155 A. 425. This was, however, a case where prayers were offered to take the case from the jury and others were offered containing instructions to the jury based on the assumption that the Court might reject the prayers to take the case from the jury. It has been the universal practice in the trial of cases in this State to offer prayers to take the case from the jury and at the same time additional prayers concerning the facts of the case. The former require a ruling of the court as to whether there is any legally sufficient evidence to go to the jury. The other prayers based upon the facts are not inconsistent with the former prayers.

Appellant's prayers were based upon exactly the same state of facts and are entirely different from those offered in *Surratt v. Wagner,* 161 Md. 159, 155 A. 315, where two prayers were approved, each of which presented a separate legal proposition which in turn depended upon the finding of the jury as true a particular group of facts complete and independent of all other facts.

Appellant, therefore, is in the position now of contending against the correctness of the legal proposition contained in its prayer 1-A, which the Court granted, and in our opinion this practice cannot be approved. *Philadelphia, W. & B. R. Co. v. Harper,* 29 Md. 330; *Sittig v. Birkenstack,* 35 Md. 273, *Hess v. Newcomer,* 7 Md. 325; *Horner v. Rowe,* 139 Md. 660, 116 A. 471.

The refusal of appellant's first and second prayers was correct.

Appellant's third and 3-A prayers sought to confine the jury in determining the fair market value of the steel to mill prices plus handling charges. The fair market value of this steel was a question for the jury and appellant so informed the jury in its 1-A prayer. It was, therefore, not proper to confine the jury to these mill prices, and the Court was correct in rejecting the third and 3-A prayers.

Appellant's sixth, 6-A, 6-B, and 6-C prayers all have reference to an item of overhead contained in appellee's

invoice B-62. This overhead was a charge made by appellee in addition to the cost of labor and materials entering into manufacturing of these tools. It was an amount arrived at by figuring the proportion of the costs of engineering and supervision, making drawings and designs, and general expenses of operating the business while these tools and machinery were being maufactured.

Witness Fast testified that the books and records of appellee company were examined for the purpose of ascertaining the capital value of this property and the item of overhead was added when it was decided to sell the tools in order to obtain their true value.

It is true that the overhead charge did not appear on appellee's books as a part of the original capital cost at the time of acquisition. The items in this invoice on which overhead is charged were manufactured and not purchased by appellee. The books did, as a matter of fact, show in several accounts the general overhead expenses and this the testimony showed was part of the original capital cost. The agreement provided for ascertaining the original capital cost and thus did not limit such cost to whatever might appear on appellee's books as the actual cost of manufacturing these implements without including anything for overhead expenses. It was the duty of the jury to determine the "original capital cost" to appellee at the time of acquisition. The acquisition in respect to these items was their manufacture by appellee. We think in arriving at this cost, the jury had a right to consider such part of the overhead expense as entered into the manufacture of the same.

The lower court was, therefore, correct in rejecting appellant's sixth, 6-A, 6-B, and 6-C prayers.

Appellant's first, second, third, fourth, and fifth exceptions related merely to conversations leading up to the making of the agreement of sale, and this testimony could have no harmful effect upon appellant. The ruling of the lower court on these exceptions was proper. For the reasons hereinbefore stated, in our rulings upon the prayers, we think the appellee had the right to show

breaches of the contract. The evidence offered in the sixth exception was for the purpose of showing that appellant had provided no insurance on the equipment in violation of the contract and objection to this evidence was rightly overruled.

It was also admissible for appellee to show that the machinery was delivered and received by appellant in compliance with the terms of the contract and that part of the same had been sold by appellant. For this reason, there is no error in the rulings upon the seventh, eighth, and ninth exceptions.

Exception ten is taken to the ruling of the lower court in permitting appellee to show that it had not received any amount of money representing the sale of some of the steel by appellant to Engineering and Research Corporation. We do not see the relevancy of this testimony, but the admission of it is not harmful to appellant, and there is no reversible error in this exception.

The eleventh exception was taken to a ruling of the Court during the cross-examination of witness Fast. The witness was asked if he remembered appellant's counsel requesting him for his purchase price and his refusal to give it. He was asked in the same question whether he wished to give it now. We think the objection to this question was properly sustained.

The twelfth exception was to the ruling of the Court in refusing to strike out a previous answer of the same witness given upon his cross examination. We think the ruling of the Court was correct as the answer was in response to the question.

The ruling upon the prayers has disposed of the admissibility of prices for this material fixed in agreements made by appellant with other parties in 1940, involved in the thirteenth exception.

The inquiry as to the price of the steel was by the very terms of the contract confined to the fair market value at the time of delivery. The steel had a market value when it was delivered, and we think the testimony should be confined to that time. The cases cited by

appellant are not inconsistent with this view of the law.

Appellant's fourteenth and fifteenth exceptions involve the admissibility of the testimony of appellee's witness Nelson as to the market prices of certain items of the steel in 1942. The witness was qualified to testify about these prices, and his testimony with his explanation was admissible.

The testimony sought to be elicited from appellant's witness, Taggert, as to quotations of prices for the steel "for years previous, back as far as 1940," involved in appellant's sixteenth exception has been considered in our rulings upon the prayers.

Exception seventeen concerns the question we have discussed in connection with the prayers, involving two hundred per cent overhead, which appellee's testimony showed was expended in the production and manufacture of part of the tools covered by Invoice B-62. We think the question involved in this exception concerning what was the accepted practice with respect to these articles when not made for re-sale has no material bearing on the propriety of this overhead charge, and the testimony was properly rejected.

The testimony offered in appellee's eighteenth, nineteenth, and twentieth exceptions was rightly excluded as it was not competent evidence.

The twenty-first and twenty-second exceptions involved the rejection of the deposition of George E. Probest, Jr. We think this testimony concerning mill prices in 1940 was not admissible as reflecting upon the fair market value of the steel at the time of delivery.

We find no substantial error in the rulings of the Court below.

*Judgment affirmed, with costs to appellee.*