ALPHEUS R. APPLEMAN *vs.* HENRY J. MICHAEL and ALEXANDER D. MICHAEL, trading as MICHAEL & BROTHER

*Action to recover the Value of goods sold—Limitations—Pleadings—Measure of Damages.*

A declaration contained the common counts for goods sold and delivered, and two special counts setting forth specially an agreement by the defendant with the plaintiff to purchase goods at an appraised value, and upon the completion of the valuation to give his note for the amount so to be ascertained, payable in ninety days, with interest from the day of sale, and setting forth also the performance of their part of the agreement by the plaintiffs but that *"the defendant refused and still doth refuse to execute said note, and refused and still doth refuse to pay for the said goods,"* although the plaintiffs with the knowledge of the defendant, were ready and offered to comply with their part of the agreement as specifically set forth in the declaration. The suit was brought more than three years after the sale, but within three years from the *maturity of the note,* which it was alleged the defendant agreed to execute. Upon limitations pleaded to the action, it was HELD:

That the suit was to be regarded as an action for the value of the goods and not simply for a breach of the contract by the defendant in refusing to execute the note, and was therefore brought in time to save the statute.

No principle involved in the action of *assumpsit* is sustained by a greater force of authority, than that where there has been a special contract, the whole of which has been executed on the part of the plaintiff, *and the time of payment on the other side has passed,* a suit may either be brought on the special contract, or a general *assumpsit* may be maintained; and in the latter case the measure of damages will be the rate of recompense fixed by the special contract.

APPEAL from the Circuit Court for Washington County.

The nature of this case, and the pleadings and facts are sufficiently stated in the opinion of the Court.

*Exception.*—At the trial the plaintiffs offered the three following prayers:

1. That if the jury believe from the evidence that the goods spoken of by the witnesses, in the store of Fales, were sold to the plaintiffs, in consideration of a debt due by Fales to the plaintiffs, and of a debt due by Fales to Griffith & Co., which the plaintiffs were authorized to settle, and the latter, through one of the members of the firm, had control of the goods under such sale and purchase, and were about to box them up and send the same to Baltimore, and while the plaintiffs thus had the control of said goods, with the assent of said Fales, they agreed to sell such part of the goods as were saleable in Hagerstown, to the defendant for such sum as an inventory and appraisement of the same would amount to, to be made by one of the plaintiffs, and the said Fales, and that with the knowledge and assent of said Fales, such inventory and appraisement were immediately and on the same day made out by the witness Michael, and the said Fales, the said Fales acting for said defendant; and shall further believe that the said defendant was to execute his note at ninety days from date of said appraisement, with interest from that time, to the plaintiffs, for the sum to which such goods would amount; and that the defendant at the time of such purchase, said that the goods were purchased by him for the use of said Fales, and directed that they should remain in possession of said Fales, and that the plaintiffs accordingly left them in possession of said Fales, who dealt with them afterwards, and retained and sold them, then the plaintiffs are entitled to the amount of said appraisement given in evidence, with interest from that time, in this action, if the jury shall find that the defendant did not give his note as aforesaid, but refused to give the same or pay for said goods.

2. And further, if the jury shall believe the matters stated in the foregoing prayer, then the Statute of Limi-

tations is no bar in this case, the suit having been brought on April 3rd, 1873.

3. And if the jury shall believe from the evidence, that the plaintiffs, on the 21st February, 1870, sold to the defendant the goods in the store of Fales at such price as Fales and Henry J. Michael should fix upon the same, with interest from the day of sale, omitting unsaleable articles, and that the defendant agreed to execute his note for the amount of the said appraisement, payable ninety days after the day of sale, with interest from the day of sale; and that said Fales and Michael appraised the saleable goods in said store at the sum of $1,173; and if they shall further find that the defendant in his agreement to purchase, (if they find such agreement,) ordered and directed said goods to remain in said store, after said appraisement was completed; and that the said plaintiffs on the same day, or the following day, and after the appraisement was completed, left said goods in said store at the disposal of the defendant, and that they requested the defendant to execute his note for the said sum of $1,173, with interest from the day of sale, and he refused to execute said note, then the plaintiffs are entitled to receive the sum of $1,173, with interest from the day of sale.

The defendant asked the Court to instruct the jury as follows:

1. That unless the jury find from the evidence that Fales, on or about the 21st of February, 1870, delivered the stock in his store to the plaintiffs, there was no consideration for the promise of the defendant, if the jury believe the defendant did promise and agree as set forth in the declaration, *unless they shall further find that the said contract of sale offered in evidence by the witnesses was made in the presence of the said Fales, and with his consent and approval.*

2. That before the plaintiffs can recover in this case, it is incumbent on them to satisfy the jury from the evidence

that the said Fales actually surrendered and gave over to the plaintiffs, for a valuable consideration, the stock in trade in his store-room at the time the witness Michael was in negotiation with him in reference to the claims of Michael & Bro. and Griffin & Co., in February, 1870, and before the contract described in the declaration, *or that the said contract of sale to the defendant, (if made,) was made with the knowledge and consent of the said Fales.*

3. That before the plaintiffs can recover in this action, they must find from the evidence that the stock in trade belonging to Fales, had been actually sold and delivered by Fales to the plaintiffs before the alleged contract between the plaintiffs and defendant had been made, and that the property or stock in trade had actually been delivered by Fales to the plaintiffs, with an intent on his part to part with all ownership over them, and that they were accepted by the plaintiffs as their own property; and in order to find such sale, the jury must find from the evidence that the said Fales and the plaintiffs had either agreed upon the price to be paid, or that they had left that matter open for future agreement or adjustment between them ; *that if the jury find that the plaintiffs agreed with Fales to purchase said stock of goods, by giving up and no longer holding as claims against said Fales, the sum of $4,800, due by Fales to them, and a debt due by Fales to Griffith & Co. for about six hundred dollars, as the consideration of such sale, that this is a sufficient agreement for the price of said goods as between Fales and the plaintiffs; and if the jury shall find that the said sale made by plaintiffs to defendant, was made in the presence of Fales, and by his knowledge and consent, and that he assisted in making the inventory of said goods, with a view to carry out the sale by plaintiffs to defendant, and endorsed said inventory as correct, and all these acts were done with a view to carry out said sale, then the said Fales would be estopped to deny the validity of said sale by*

*plaintiffs to defendant, and the defendant cannot avail himself of any defect in a sale of the goods by Fales to plaintiffs.*

4. That if the jury find that the contract set out in the declaration was entered into by and between the plaintiffs and defendant ; and further find, that afterwards the defendant declined or refused to carry out its terms or perform his part of the agreement, then the plaintiffs' cause or right of action accrued at the time of such refusal and declining to perform the agreement ; and if the jury find that more than three years elapsed between the time when the defendant refused to perform his part of the agreement, and the bringing of this suit, then under the pleadings in this case, the plaintiffs cannot recover.

5. That if the jury find from the evidence that the defendant agreed with the plaintiffs that an inventory of the goods in the possession of Fales in February 1870, should be taken, and that the defendant agreed with the plaintiffs that he would endorse the note of the said Fales for the full amount of such appraisement, to be paid to the plaintiffs, then the plaintiffs cannot recover in this action, even if the jury find that the defendant afterwards refused to endorse the note of Fales, or become his surety for the amount of the appraisement.

6. That if the jury shall find from the evidence, that the plaintiffs were the owners of, and sold to the defendant, the saleable goods in the store of E. C. Fales, on the 21st day of February,1870, and that the defendant was to pay for them according to the valuation or appraisement put upon them by E. C. Fales and H. J. Michael, and that upon such valuation or appraisement being made known to the defendant, and endorsed correct by E. C. Fales, the defendant was to execute his note for the amount of said valuation or appraisement, at ninety days, and that such valuation was made known to the defendant, and that upon the execution of such note the plaintiffs were to

release said Fales from all indebtedness then due thereon by said Fales, as also to assume, settle and release said Fales from the indebtedness due by him to S. S. Griffith & Co., the plaintiffs are not entitled to recover from the defendant in this action unless they prove some memorandum in writing, signed by the defendant, of the terms of such sale, or satisfy the jury that said goods had been delivered to the defendant, or some part thereof, and actually accepted by the defendant, *or that the said goods were by the plaintiffs left in possession of said Fales under an understanding or direction given by the defendant to the plaintiffs so to leave them.*

7. That if the jury find from the evidence, that the defendant on or about the 21st day of February, 1870, promised and agreed to purchase of the plaintiffs the stock in trade mentioned by the witnesses, and that more than three years elapsed from the time of such promise and agreement, and the institution of this suit, then the plaintiffs cannot recover.

8. That if the jury find the contract between the plaintiffs and defendant as set out in the declaration, and find from the evidence the defendant was to take such of the stock in trade as was saleable, and that such as was not saleable was not to pass under the sale, then it is necessary for the plaintiffs to prove and satisfy the jury that at the time of the contract the unsaleable articles were separated from such as were saleable, and those that were saleable were set apart for the defendant and delivered to and accepted by him, or some part thereof, and unless these facts are found by the jury to be established by the evidence, the plaintiffs cannot recover in this action.

9. That in order to bind the defendant in this case, it is necessary that the jury shall find from the evidence, that the stock in trade spoken of by the witnesses, was not only appraised as stated by them, but that it was by the plaintiffs delivered to the defendant, with an intent thereby, to

vest the right of possession in the defendant, and also, that the defendant actually accepted the goods ·with an intention on his part to take possession thereof as owner.

The Court (MOTTER and PEARRE, J.,) granted the plaintiffs' prayers and the fifth prayer of the defendant and rejected the defendant's first, second, third and sixth prayers as offered, but granted them with the modifications to be found in *italics;* and rejected the defendant's fourth, seventh, eighth and ninth prayers absolutely.

The defendant excepted. The jury rendered their verdict for the plaintiffs, and judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ALVEY, J.

*Attorney General Syester,* for the appellant.

A right of action accrued to the vendors immediately on the repudiation of the contract by the alleged vendee, by his refusal to give his note at ninety days, or to be held bound by any of the terms of the contract. Because on the vendee's repudiation of the contract, by such a refusal, the vendors had the right to treat the special contract as they understood it, as at an end ; to rescind it and go on the *quantum meruit* for the goods.

By their pleadings, and the facts in the record, they have elected to treat the special contract, as they aver it to have been, as rescinded. And a right of action accrued to them at once, and immediately upon the repudiation of the contract by the vendee ; and therefore, the Statute of Limitations began to run, certainly from the time of the vendee's refusal to comply with the terms of sale, if not from the day of the contract.

Having elected to treat the express contract as at an end, not averring the non-payment of the money at the time, and according to the terms of the agreement, as the gra-

vamen of their complaint, but relying on the non-execution of the note as one of the breaches, the vendors must be held to the legal effect of this state of pleading, namely, that their cause of action arose at once on the repudiation of the contract by the vendee. Where one of the parties to a special contract, not under seal, has refused to perform his own side, the other has thereupon a *right* to elect to rescind it ; and may on doing s̀o, *immediately sue* on a *quantum meruit*. 2 *Smith's Lead. Cases*, 28, *notes to Cutter and Powell*. *Bullen & Leake*, 37, *and authorities cited*.

The circumstance of the refusal to comply not only entitled the vendors to rescind, but they have actually treated the contract as rescinded.

. That the vendors had the right to rescind this contract we think plain. The extension of credit was on condition of the note. It was as much a part of the contract as anything else. The vendors were merchants in Baltimore, and the note was the main inducement to the credit; if not the sole consideration for it. And when the vendee repudiated this part of the agreement, the vendors were no longer bound by it. . The vendee's refusal to give his note, released the vendors from any obligation to extend credit. *Per Ld. Alvanley in Dutton vs. Solomonson*, 3 *B. & P.*, 585. And by their pleadings they show a cause of action, which accrued to them, at once and immediately on the refusal to execute the note, which was more than three years before the suit was instituted.

The execution of the note was the inducement to the credit, and on the vendee's refusal to comply with this part of his agreement, the vendors were no longer bound to extend the credit, and had the right at once to their action. *Corties vs. Gardner*, 2 *Hall*, 345 ; *Reeves vs. Harris*, 1 *Bail, S. C.*, 563 ; *Per* PARKE, *Ba*j*on, in* 2 *B. & A.*, 431, (22 *E. C. L.*, 117.)

*Z. S. Clagett* and *D. Weisel,* for the appellees.

The prayers of the plaintiffs were properly granted by the Court, and contain the whole law of the case.—The defendant was not injured by the refusal of the Court to grant his prayers or any of them, and they were properly rejected. The testimony shows a sale and delivery of the stock of goods by Fales to the plaintiffs. The goods were placed under control of H. J. Michael, one of the plaintiffs, and preparations were made to ship the goods to Baltimore to the plaintiffs.

The testimony shows a sale and delivery by the plaintiffs to the defendant. As to what constitutes sale and delivery, regard must be had to all the facts bearing upon the question, and especially to the character of the transaction, in order to ascertain whether the delivery was such as the nature of the case admitted. The Court endeavors to ascertain the intent of the parties, and applies that test as a controlling principle in defining their rights and obligations. *Hall & Loney vs. Richardson,* 16 *Md.,* 412 ; *Benjamin on Sales,* 69.

Although the contract to pay was conditional, if the condition has been fulfilled by the plaintiffs, a common count is sufficient. 1 *Exchq.,* 312 ; 5 *H. & J.,* 47 *and* 50 ; 8 *Md.,* 142, 143 ; 2 *Md.,* 50, 53 *and* 61 ; 2 *Greenleaf's Ev.,* sec. 104 ; *Bullen & Leake,* 36, 38, 39 *and* 40 ; (also 238, 239 ;) 6 *Adol. & Ellis,* 829, 837 ; 3 *Bing. N. C.,* 737 ; 3 *Barn. & Cress.,* 420 ; 4 *Md.,* 441, 491.

The plea of the Statute of Limitations is no bar in this case. Limitations begin to run after the expiration of the credit. When a note has been given for goods sold, the seller may, after the note falls due, sue on the account. 7 *Md.,* 215.

Although the debt is payable only after the expiration of a certain period of credit, yet after the expiration of the period, the *indebitatus* count is sufficient. *Bullen & Leake,* 238, 239, 240, 241 ; *Helps vs. Winterbottom,* 2 *Barn. & Adol.,* 431.

MILLER, J., delivered the opinion of the Court.

The declaration in this case contains the common counts for goods sold and delivered, and two special counts to the effect, that one Fales being indebted to the plaintiffs in a certain sum of money, sold and delivered to them all his stock of dry-goods in his store in Hagerstown, which goods the plaintiffs took possession of and were about to remove to Baltimore, but before they were removed the plaintiffs at the request of the defendant sold and delivered to him, so many of said goods as Fales should say were saleable in the Hagerstown market, at such price or valuation as should be agreed upon by said Fales as agent for the defendant and Henry J. Michael one of the plaintiffs, and it was agreed by and between the plaintiffs and defendant, that upon the completion of such valuation the defendant *should execute his note for the amount so to be ascertained, payable in ninety days,* with interest from the day of sale, and upon executing this note and payment thereof, the plaintiffs agreed to execute a receipt in full for their debt against Fales, and also procure a release of a certain debt due from Fales to another party, and the plaintiffs aver that said Fales and Michael on the 21st of February, 1870, took an inventory of said saleable goods and assessed and valued them at the sum of $1173.35, and the same were left remaining in said store by order and direction of the defendant, and passed into his possession and control, that this inventory and appraisement was endorsed by Fales as correct, and was by the plaintiffs afterwards presented and shown to the defendant, and he was thereupon requested to execute his note for the said sum of $1173.35 payable at ninety days, with interest as aforesaid, *but the defendant refused and still doth refuse to execute said note and refused and still refuses to pay for said goods,* although the plaintiffs with the knowledge of the defendant were ready to deliver the receipt and release aforesaid, and are still willing and ready to deliver the

same, and have offered so to do upon his executing said note and paying the same.

The sale, inventory and appraisement of these goods were made on the 21st of February, 1870, and this suit was instituted on the 3rd of April, 1873, more than three years after the sale, but less than three years from the *maturity of the note,* which it is alleged the defendant agreed to execute. Among others the plea of limitations was pleaded, and the principal question in the case is whether the Statute is a bar to this action, or, in other words, was there error in granting the plaintiffs' first and second prayers to the effect that, the Statute is no bar if the jury find the facts alleged in the special counts of the declaration, and in rejecting the defendant's fourth prayer that if the jury find the contract set out in the declaration, and that the defendant afterwards *declined or refused* to carry out his part of it, then the plaintiffs' cause of action accrued *at the time of such refusal and declining,* and if the jury find that more than three years elapsed between that time and the bringing of this suit, then under the pleadings the plaintiffs cannot recover.

It is well settled and familiar law, that if goods be sold on credit no action for their value lies until the credit has expired, and it would be superfluous to cite authorities in support of that proposition. So it has been further held that if goods be sold to be paid for by a bill at a certain time, *indebitatus assumpsit* for goods sold and delivered will not lie until after the expiration of the time which the bill has to run. *Dutton vs. Solomonson,* 3 *Bos. & Pull.,* 582. Again where goods were sold to be paid for in three months after a certain day, by a bill at two months, it was held to be a sale on a credit of *five months* and that *assumpsit* for goods sold and delivered could not be brought at the *end of three months* upon the neglect of the vendee to give his bill at two months, and that the only remedy the vendor *then* had was a special action on the case for

damages for breach of the contract in not giving the bill. *Mussen vs. Price*, 4 *East*, 147. In each of these cases the plaintiff was non-suited because he had brought his action before the credit had expired. In the more recent case in the King's Bench of *Helps vs. Winterbottom*, 2 *Barn. & Adol.*, 431, goods were sold at six months credit, and payment then to be made by a bill *at two or three months* at the buyer's option, and this was held to be in effect a *nine months* credit, and consequently that an action for goods sold and delivered commenced *within* six years from the end of the nine months, though *more* than six years from the end of the six months, was in time to save the Statute of Limitations. In that case also, the Court held the plaintiff might, at the end of the six months, have brought an action *for not giving a bill* pursuant to the contract, but then he would not have recovered the whole price of the goods, but only such damages as the jury might have thought reasonable for that breach of the contract. We have not been able to discover that the authority of these decisions or the principle they establish, has ever been seriously denied or questioned. On the contrary, we find *Helps vs. Winterbottom,* cited as authority for the proposition it announces, in the latest editions of *Chitty* and *Parsons on Contracts*, (2 *Chitty*, 1231 ; 3 *Parsons*, 91,) and no opposing cases are referred to by those eminent text writers or their learned annotators. And in support of them we may refer to the cases of *Price vs. Nixon*, 5 *Taunt.*, 338 ; *Strut, et al., vs. Smith*, 1 *Cr. Mees. & Ros.*, 312, and *Fergusson vs. Currington*, 9 *Barn. & Cress.*, 59. It is true that PARKE, J., in delivering his judgment in *Helps vs. Winterbottom* expressed some doubt whether the Statute was not an answer to the action, inasmuch as the agreement for giving the bill was *optional* in its form, and he declared he did not see how it could be said there was any *certain credit* (after the six months) at the expiration of which *indebitatus assumpsit* would lie for the

value of the goods, the contract so far as regards the bill
being for a time at the debtor's option, and added: "I
should be rather disposed to say here that the real contract
was to *pay in a bill* at the end of six months, and if no
bill was given at that time, the agreement was broken,
*and the credit was then at an end.*" But in the case before
us, there is no room for such a doubt. Here the contract
was for an *absolute credit* of ninety days, the purchaser
agreeing to give his note for the amount ascertained by
the appraisement payable at that time. It is in form and
substance the same as that in *Dutton vs. Solomonson*, where
the goods were sold to be paid for by a bill at two months.
The authorities cited and the positions taken in the very
ingenious argument of the appellant's counsel, are not, in
our judgment, applicable to this peculiar class of contracts.
This was not a sale and delivery *upon condition* of giving
the note where no title would have passed, unless the note
were given, and where upon refusal to give it, the vendor
could have reclaimed the goods or brought trover for their
conversion. But it is a case where the sale and delivery
of the goods were absolute, and where the title to them
immediately passed thereby, but they were to be paid for
at a subsequent period. Nor was the credit dependent
upon the execution of the note, so that it could be termi-
nated or treated as at an end by the vendor upon the
neglect or refusal of the purchaser to give the note. The
note would have given no additional security to the ven-
dor and there was no stipulation in the contract for
such security. In short, as we have already stated, this
is simply the case of a sale of goods upon an absolute and
unconditional credit of ninety days, and we are clearly of
opinion no action *for their value* could, under any circum-
stances, have been sustained if brought before the expira-
tion of that time. It follows as a necessary consequence,
the suit was in time to save the Statute, if it is to be re-
garded as an action for the value of the goods, and not

simply an action for a breach of the contract by the defendant in refusing to execute the note. Whether it be the one or the other of these actions is the sole remaining question on this branch of the case. It would have been a sad misapprehension and slip in the pleader to have brought the action in the latter form in which he could not have recovered the value of the goods, but only damages for the non-execution of the note, or to have so framed the declaration, as to leave the question in doubt. But upon this point we have no difficulty. The declaration contains the common counts for goods sold and delivered, and the special counts after stating the contract and performance, or readiness to perform every thing required to be done and performed by the plaintiffs, aver not only a refusal by the defendant to execute the note, but a refusal to *pay for the goods*. The former counts would have been sufficient without the latter, and the latter are in substance counts upon the special contract, setting it forth, and averring performance on the part of the plaintiffs, and non-performance of the whole and every part of it on the part of the defendant. Under either, the value of the goods could have been secured, for no principle involved in the action of *assumpsit* is sustained by a greater force of authority, than that where there has been a special contract, the whole of which has been executed on the part of the plaintiff, *and the time of payment on the other side is passed*, a suit may either be brought on the special contract or a general *assumpsit* may be maintained, and in the latter case, the measure of damages will be the rate of recompense fixed by the special contract. 2 *Smith's Lead. Cases*, 47. It is not unusual in practice to join both sets of counts in the same declaration. In this case they are both framed and adapted to reach the same result, viz.: the recovery of the value of the goods sold and delivered, as fixed by the special contract. There is therefore no error in the rulings we

Appleman *vs.* Michael & Brother.

have thus far considered, nor in the rejection of the defendant's seventh prayer, which relates to the same question of Limitations.

The propriety of these rulings was the main subject of argument at bar on both sides, and their correctness being established, that determines the question of the plaintiffs' right to recover. The remaining rulings may therefore be disposed of in a few words. As to the several modifications made by the Court to the defendant's first, second, third and sixth prayers, it suffices to say, we find no error in them. The plaintiffs' first prayer fairly submitted to the jury the finding of every fact essential to their right to recover the appraised value of the goods, with interest from the day of sale, and there was consequently no error in the rejection of the defendants' eighth and ninth prayers, even if there were no other grounds of objection to them, and if there was any error in the plaintiffs' third prayer, which could be reviewed and corrected by this Court, it is plain it was error which worked no injury to the defendant, and therefore not fatal to the judgment.

*Judgment affirmed.*

(Decided 10th November, 1875.)