PHELPS ET AL. *v.* HERRO ET UX.

[No. 65, September Term, 1957.]

*Decided December 19, 1957.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND and PRESCOTT, JJ.

*William D. MacMillan* and *J. Calvin Carney,* with whom was *W. Garrett Larrimore* on the brief, for appellants.

*John O. Herrmann,* with whom was *Charles F. Rechner, Jr.,* on the brief, for appellees.

PRESCOTT, J., delivered the opinion of the Court.

This appeal questions the validity of an order passed on April 3, 1957, that directed, "the Plaintiffs' (appellees') motion for a Summary Judgment be granted," and a judgment entered on April 8, 1957, in favor of the appellees against the appellants for the sum of $34,135.82; both in the Circuit Court for Anne Arundel County.

On October 21, 1955, the appellees and appellants entered into a written agreement whereby the appellees agreed to sell, and the appellants agreed to buy, fractional interests of the appellees in and to certain real property and corporate stock for the sum of $37,500. The agreement further provided that appellants should pay the purchase price as follows:

> "1. Five Thousand Dollars ($5,000.00) in cash on or before January 1, 1956.
>
> "2. A promissory note in the amount of Thirty-two Thousand Five Hundred Dollars ($32,500.00) calling for principal payments in the amount of Five Thousand Dollars ($5,000.00) plus interest at the rate of four per cent (4%) per annum on the first of each succeeding January and the entire balance to become due and payable January 1, 1961. However, Phelps and Sandsbury (appellants), may extend the maturity date until January 1, 1963, by

giving notice of intention to so extend in writing to Herro (appellee) on or before July 1, 1960."

The appellants paid the first $5,000 as provided in the agreement. They and the appellees remained rather closely associated in several intricate and complicated business transactions until some time in September of 1956. At that time, the appellees transferred unto the appellants their fractional interests in the real estate and corporate stock named in the contract. Soon thereafter, negotiations were conducted by the parties, which had as their objective the sale to the appellants of all of the interests of the appellees in all business enterprises where there were mutual interests, or a purchase by the appellees of the appellants' interests therein. A meeting was held and attended by all of the parties on October 11, 1956, at the office of the appellees' counsel. At this meeting, the appellants contend the appellees made an oral proposal that was subsequently accepted unconditionally by the appellants in writing, thereby making a binding contract. While the appellants fully acknowledge the existence of the contract involved in the case at bar, this alleged contract, as set forth by them, materially changed their obligations thereunder. The appellees contend the appellants did not accept the proposal as made by them, and claim the purported acceptance contained a number of terms either in addition to or at variance with the oral offer made by them; consequently the purported acceptance was no more than a counter-proposal, which was not acceptable to them.

The appellees instituted an action at law against the appellants on *December 7, 1956.* The declaration consisted of five common counts in *assumpsit* and one special count on the written contract. At the same time, the appellees filed a motion for a summary judgment to which was attached a photostatic copy of the written contract. This motion was supported by an affidavit in proper form. This affidavit, after stating some of the facts related above, alleges the appellees: "transferred and conveyed to the defendants their said interest in and to said real and personal property and performed all other matters and things required of them under said

agreement; that the defendants paid the plaintiffs five thousand dollars ($5,000.00) but have failed and refused to execute and deliver to the plaintiffs a promissory note in accordance with the said agreement although plaintiffs have so requested and demanded; that defendants have, through their attorney and agent, notified the plaintiffs, through their attorney and agent, that they will not pay the balance of the purchase price to the plaintiffs in the amount of thirty-two thousand five hundred dollars ($32,500); that there is now therefore justly due and owing the plaintiffs by the defendants over and above all credits the sum of thirty-two thousand five hundred dollars ($32,500) together with interest from January 1, 1956." The appellants filed what they termed an "Answer in Opposition to Plaintiffs' Motion for Summary Judgment." As the affidavit attached to this "answer" was clearly defective in not being made on personal knowledge (Maryland Rule 610 b), it cannot be considered here. The appellees filed a supplemental affidavit before the hearing on the motion for summary judgment stating that they had received no payment from the appellants since the filing of the suit. A hearing was held on the motion on March 29, 1957. On April 3, 1957, a docket entry was made that reads: "Ordered that the Plaintiffs' motion for Summary Judgment be granted," and on April 8, 1957, judgment was entered against the appellants in favor of the appellees for $34,135.82. From these, the appellants have appealed.

The judgments herein were entered under the authority of Maryland Rule 610. Section a 1 of this rule provides: "In an action, a party asserting a claim, * * * may at any time make a motion for a summary judgment in his favor as to all or any part of the claim on the ground that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law." As the appellants' affidavit was defective, there was no genuine dispute concerning the facts, so we must determine whether the appellees were "entitled to judgment as a matter of law."

It will be noted suit was filed December 7, 1956, and the next instalment of $5,000 was not due under the contract until January 1, 1957. It is well settled and familiar law

that a cause of action must be ripe at the commencement of the suit and the non-existence of a cause of action at that time is fatal to the right to recover; therefore it would be superfluous to cite authorities in support of the proposition.

The appellees' theory of the case is that at the time of the hearing on the motion for a summary judgment, their allegations that the appellants had failed and refused, although requested and demanded, to execute and deliver a promissory note, and that the appellants had notified the appellees they would not pay the balance of the purchase price showed such a definite and specific repudiation of the contract that it entitled them to sue immediately for the *entire* sum due by the appellants under the contract. The appellants, on the other hand, claim the suit was prematurely brought; that originally the contract was a bilateral one that became unilateral as soon as the appellees performed all of the matters and things required of them under the agreement (the fact that appellees had so performed being admitted in appellees' affidavit); that under the agreement of the parties, the appellants had not agreed to give a *negotiable* promissory note, or a note that was to be secured in any manner, but simply a promissory note payable to the appellees and signed by the appellants; that the consideration named was higher than the appellants would have agreed upon, unless the appellees had agreed to take an unsecured note payable over a long period of time; that when the contract became unilateral, the only obligation thereunder was that the appellants were required to pay several sums of money in instalments, which obligation, assuming a failure to give a note and a statement by their attorney that appellants would not pay the note, would not be accelerated so as to make the entire sum named in the contract, or any part thereof, due on December 7, 1956, when suit was instituted.

One of the leading cases on the question of the anticipatory breach of a contract is *Hochster v. De la Tour*, 2 El. and Bl. 678. There, the plaintiff in April, 1852, had agreed to serve the defendant, and the defendant had undertaken to employ the plaintiff, as courier, for three months from June 1, 1852, on certain terms. On May 11, 1852, the defendant wrote

the plaintiff that he had changed his mind, and declined to avail himself of plaintiff's services. On May 22, 1852, the plaintiff brought an action at law for breach of the contract. It was held that there could be a breach before the time fixed for performance; that a positive and absolute refusal to carry out the contract prior to the date of actual default amounted to such a breach. Since the decision in this case, there have been numerous and varied rulings on the many and complex angles that have arisen in applying, or not applying, the doctrine of anticipatory breach of a contract, and it is entirely possible the law relating thereto is not, at the present, well settled in all of its aspects. Annotation, 105 *A. L. R.* 460, 462.

However, with reference to unilateral contracts, or bilateral contracts that have become unilateral by full performance on one side, for the payment of money in the future, without surety or other conditions involved, (the situation in this case when suit was instituted), the text writers and decisions are in general accord that the doctrine of anticipatory breach has no application. 5 *Williston, Contracts,* sec. 1328; 4 *Corbin, Contracts,* sec. 963; Annotation, 105 *A. L. R.* 460, 465; *Restatement, Contracts,* sec. 318, comment e. In *Roehm v. Horst,* 178 U. S. 1, a leading case, the Supreme Court, on elaborate consideration by Chief Justice Fuller, recognized the principle. In *Greenway v. Gaither, Taney, Circuit Court Decisions,* 227, 231, the facts were quite analogous to those in the case at bar. The plaintiff agreed to sell, and the defendant to buy, a house and lot for a sum of money to be paid in 18, 24, 30 and 36 months. The defendant repudiated the contract, and suit was instituted before the first instalment of the purchase-money was due. Chief Justice Taney decided the case had been prematurely brought. In ruling on an application to seal a bill of exceptions, he stated: "It has never been supposed that notice to the holder of a bond, or a promissory note, or bill of exchange, that the party would not (from any cause) comply with the contract, would give to the holder an immediate cause of action, upon which he might sue before the time of payment arrived." A similar ruling was made in *General American Tank Car Corp. v.*

*Goree* (C. C. A. 4th), 296 F. 32, 36, wherein the court stated flatly: "No right of action arises from the repudiation before maturity of a unilateral contract, nor for repudiation of an independent promise in a bilateral contract. An action cannot be sustained on a promissory note before maturity on the ground that the maker had declared his intention not to pay it. A tenant's repudiation of his lease does not give his landlord an immediate right of action for future rent." In a case decided by this Court, *Appleman v. Michael,* 43 Md. 269, the plaintiff agreed to sell, and the defendant to purchase, certain goods; payment therefor was to be made by the defendant by executing his note in the amount of the purchase price, payable in ninety days. The defendant refused to execute the note or to pay for the goods. Suit was instituted more than three years after the defendant's refusal to execute the note, but less than three years from the maturity of the note, which the defendant was alleged to have agreed to execute. The Statute of Limitations was pleaded. This Court held that this was not a sale upon condition that a note be given where no title would have passed unless the note were given; that it was a case where the sale and delivery of the goods were absolute, and where the title to them passed immediately, but they were to be paid for at a subsequent time; that the credit was not dependent upon the execution of the note, so that it could be terminated or treated at an end by the vendor upon the neglect or refusal of the purchaser to give the note; that the note would have given no additional security to the vendor and there was no stipulation in the contract for such security; that it was simply a case of a sale of goods upon an absolute credit of ninety days, and the Court was "clearly of (the) opinion (that) no action *for their value* could, under any circumstances, have been sustained if brought before the expiration of that time." In other words, the Court held that if the action had been brought after the neglect or refusal to give the note, but before its maturity date, the cause of action would not then have accrued and the suit would have been prematurely brought.[1]

---

1. For other cases holding that the doctrine of anticipatory

We think the proper rule is that the doctrine of anticipatory breach of a contract has no application to money contracts, pure and simple, where one party has fully performed his undertaking, and all that remains for the opposite party to do is to pay a certain sum of money at a certain time or times, and, under the circumstances of this case, this is as far as we need to rule, although some of the cases cited hold that the doctrine of anticipatory breach has no application whatsoever in unilateral contracts, or bilateral contracts that have become unilateral by full performance on one side.

The appellees cited to us the case of *Precision Development Co. v. Fast Bearing Co.*, 183 Md. 399, 37 A. 2d 905. We fail to see that it applies to the facts of the present controversy. There, the defendant purchased certain articles, consisting entirely of personal property, from the plaintiff. The purchase price was to be paid by a payment of $10,000 within 30 days and the balance, according to the defendant, in five annual instalments on the first day of December of each calendar year. The defendant agreed to execute and deliver its promissory note or notes for the balance of the purchase price *secured by chattel mortgage* on the goods sold. However, the defendant failed to pay the $10,000 within the prescribed time, did not have the property insured, and declined to execute the notes or chattel mortgage. It accepted delivery of all the articles and *disposed of portions thereof*. It was held that these facts furnished ample evidence upon which the jury could find that the contract had been breached, and, if so

breach of contract either has no application to unilateral contracts, or that it has no application to unilateral contracts for the pure and simple payment of money, see *City of Hampton, Virginia v. United States* (C. A. 4th), 218 F. 2d 401; *Moore v. Security Trust and L. Ins. Co.* (C. C. A. 8th), 168 F. 496; *Brimmer v. Union Oil Co.* (C. C. A. 10th), 81 F. 2d 437; *Sagamore Corp. v. Willcutt* (Conn.), 180 A. 464; *Manufacturers' Furniture Co. v. Cantrell* (Ark.), 290 S. W. 353, 354; *Huffman v. Martin* (Ky.), 10 S. W. 2d 636, 638; *Sheketoff v. Prevedine* (Conn.), 51 A. 2d 922, 924; *Parks v. Maryland Casualty Co.* (D. C., W. D. (Mo.), 59 F. 2d 736. Cf. *Fidelity and D. Co. v. Brown* (Ky.), 20 S. W. 2d 284; *Better v. Williams*, 203 Md. 613, 617, 102 A. 2d 750; *Weiss v. Sheet Metal Fabricators*, 206 Md. 195, 203, 110 A. 2d 671.

found by the jury, warranted a recovery of the full purchase price. Cf. *Better v. Williams,* 203 Md. 613, 102 A. 2d 750. In the case at bar, there was no agreement to secure the notes in any manner whatsoever, but the agreement of the appellants was a bald promise to pay money at a future date.

The appellees relied heavily upon the cases of *Hanna v. Mills* (1839), 21 Wend. (N. Y.) 90, 34 Am. Dec. 216, *Bowman v. Branson* (1892), 19 S. W. 634 (Mo.), *Bayne v. Morris* (1863), 68 U. S. 97, and *Bennett v. Dodgson* (1955), 284 P. 2d 990 (Mont.).

The *Hanna* and *Bowman* cases are greatly weakened, if not overruled entirely, by subsequent rulings in New York and Missouri in so far as they can be said to have permitted recoveries for anticipatory breaches of contracts for the recovery of money only. (The *Hanna* case called for a note to be *indorsed* by a person *satisfactory* to the plaintiffs, which was tantamount to the giving of security.) *Nichols v. Scranton Steel Co.* (N. Y.), 33 N. E. 561, 566; *Kelly v. Security Mut. Life Ins. Co.* (N. Y.), 78 N. E. 584; *Sulyok v. Penzintezeti Kozpont Budapest,* 111 N. Y. S. 2d 75, and cases therein cited. Modified on other grounds, 107 N. E. 2d 604; *Leon v. Barnsdall Zinc Co.* (Mo.), 274 S. W. 699, 703. In *Bayne v. Morris,* the defendant was not only obligated to pay money, but to furnish a bond with penalty and surety; and in *Bennett v. Dodgson* the defendant agreed to give a "bankable" note. A different rule applies when an agreement calls for the giving of a note *with security* from one that simply requires the giving of a note.

The appellees argued further that a promise to give a negotiable note stands on the same footing as a promise to furnish security. We find it unnecessary to decide this question; because we think the promise to give a note in this case contemplated a non-negotiable one. The contract does not explicitly call for a negotiable instrument; it was to be paid over a rather extended period of time; the appellants had the option of extending the maturity date until January 1, 1963, by merely giving notice to one of the appellees; and the declaration filed by the appellees does not declare on a promise to give a negotiable instrument. Considering these facts and

all of the circumstances surrounding the execution of the contract, we conclude that the note promised by the appellants to appellees was a non-negotiable one.

From what we have said above, we conclude this case was prematurely brought, so the judgments must be reversed.

This ruling renders it unnecessary to pass upon the other questions raised by the appellants and the appellees.

We have not overlooked the fact that suit possibly could have been entered on December 7, 1956, if the suit were regarded as an action for a breach of the contract by the appellants in refusing to give the note within a reasonable time, as distinguished from an action for the value of the interests sold. *Appleman v. Michael, supra,* 43 Md. at page 281. If it had been treated as such, the appellees would have been limited to nominal damages, or such as they could have proved resulted from the failure to give the note, alone; but they were not entitled to recover the instalments named in the contract, which were not then due.

> *Judgments reversed without prejudice to the appellees' right to institute further proceedings to enforce whatever rights they may have under the contract, appellees to pay the costs.*

HAMMOND, J., filed the following dissenting opinion.

I concur with the majority of the Court only as far as agreeing that the judgment should be reversed. It is clear to me that the case should go back for decision, on the facts or as a matter of law as the question requires, as to (a) whether there had been a novation that eliminated the duty to pay what was sued for; (b) or if not, whether the contract had remained bilateral in part; (c) or if it had become wholly unilateral, whether the refusal to give the note (whether negotiable or not) did not support damages equal to the amount of the note because there had been such a frustration of the ends the agreement was expected to subserve that a breach calling for immediate full reparation should be recognized. Essentially, I dissented because I could not bring myself to

put the appellees out of Court on a factless appeal and at the same time to saddle Maryland needlessly with what I consider to be illogical and unsound law—a doctrine that is more apparent than real, and one that has been repudiated by the ablest judges and scholars.

The Court holds that the affidavit of defense first filed could not be "considered here" and did not raise below the issue of a genuine dispute as to a material fact because it was made on knowledge, information and belief. The record discloses that the defendants' answer in opposition to the motion for summary judgment alleged (a) that the plaintiffs had failed to do certain things they had agreed to as part of the contract "particularly in the assistance in the operation of Ritchie Swift Homes, Inc."; (b) that the contract had "become an integral part of a subsequent agreement between the parties hereto, thereby modifying the terms of this agreement." The affidavit was made by each of the four defendants and their counsel. It must be obvious, as was noted in *White v. Friel,* 210 Md. 274, that it may be assumed that the parties necessarily have personal knowledge of matters and agreements in which they were involved and that they are competent to testify with regard thereto. This being so, the answer and affidavit, although they were inartificial and inadequate, disclosed enough to show that there was a genuine dispute as to material facts, and the case should have gone to trial. See *Tellez v. Canton Railroad Co.,* 212 Md. 423.

If it be assumed that the first answer and affidavit were insufficient to stay a summary judgment, the motion to strike the judgment and its supporting affidavits, filed within thirty days from the entry of the judgment, demonstrated by the detailed and elaborate recital of facts alleged to be known that if the defendants could support their allegations with proof they had an absolute defense to the suit against them because the plaintiffs had agreed by a new contract to allocate the sums due them under the first agreement (that were to be evidenced by the note) to another purpose. Within the thirty day period provided by the rules the court has complete control of a judgment whether it be entered after trial, by default, by confession, or as a summary judgment. Where

a meritorious defense to a judgment is shown within the thirty day period, justice requires that the judgment be opened for proof of the defense. I think the trial court abused his discretion in refusing to allow the defendants to present the facts as to novation. If novation was not shown then the point of present breach by refusing to give the note in a reasonable time and the consequent allowance of damages equalling the amount of the note (perhaps discounted for early payment) could be decided.

The majority of the Court, instead of deciding that summary judgment should have been refused, unnecessarily decided an issue that might never have presented itself, by adopting for the first time as the law of Maryland a dubious exception to the rule of immediate allowance of damages for anticipatory breach of contract. That a right of action accrues on an anticipatory breach is firmly established. Williston opposes the idea and while forced to admit that it is the law, argues that it should not be. Perhaps because of his dislike of the doctrine, Williston urges that there should be no action for anticipatory breach of a unilateral contract or a bilateral contract that has been fully performed on one side. 5 *Williston, Contracts* (Rev. Ed.), Chap. XL. The cases, however, do not support this view, holding generally that there may be. *Roehm v. Horst,* 178 U. S. 1, 44 L. Ed. 953; *Development Co. v. Bearing Co.,* 183 Md. 399. Williston, in endeavoring to limit the doctrine of anticipatory breach, is consistent when he declares that the violation of the bare promise to pay money in the future in a contract that always was, or has become, unilateral can never give rise to immediate action. He is apologetic for his view and, recognizing that it has been criticized, says in the work cited, Sec. 1328 at 3734, that since the whole doctrine of anticipatory breach "was founded on a confusion of a right of action with a defense, it seems undesirable to enlarge the boundaries of the doctrine." Corbin denies the validity of Williston's views and conclusions. 4 *Corbin, Contracts,* Chap. 54. In Sec. 963, at 866, Professor Corbin says that "Although the author of this volume believes that the distinction should make no difference in the result reached, attention must be called to

the fact that some courts have distinguished unconditional money debts from those in which the debtor's duty to pay is conditional on some performance yet to be rendered by his creditor, recognizing anticipatory breach in the latter cases and not in the former." See also Sec. 965, where the learned author shows that the argument that recognition of anticipatory breach of money contracts involves "acceleration of date of maturity" is fallacious. To require immediate payment of sums that were to have been paid in the future does not give the promisee something he did not bargain for, if a discount that reflects the earlier date of payment is imposed.

Judge Learned Hand agrees with Corbin. See *Equitable Trust Co. of New York v. Western Pac. Ry. Co.,* 244 F. 485, 501-502, where, speaking of the doctrine of anticipatory breach, he said: "Furthermore, if performance remains mutually executory, the doctrine still applies, even though the promise is only to pay money * * *. If the doctrine has any limits, they only exclude, *and that arbitrarily enough,* cases in which at once the promisee has wholly performed, and the promise is only to pay money. Assuming what I do not mean to admit, that it has such limits, they result because the eventual victory of the doctrine over vigorous attack * * * has not left it scathless." (Emphasis supplied.)

In *New York L. Ins. Co. v. Viglas,* 297 U. S. 672, 80 L. Ed. 971, 976-977, the Supreme Court denied an insured the immediate recovery of the total of monthly disability benefits measured by his life expectancy on a holding that the insurance company had not actually and completely repudiated the contract. Mr. Justice Cardozo pointed out that if one analyzes the cases one discovers the rationale of those "which have stated at times, though with needless generality, that by reason of the subject matter of the undertaking the rule applicable to contracts for the payment of money is not the same as that applicable for the performance of services or the delivery of merchandise. * * * *The root of any valid distinction is not in the difference between money and merchandise or between money and services.* What counts decisively is the relation between the maintenance of the contract and the frustration of the ends it was expected to subserve. *The*

*ascertainment of this relation calls for something more than the mechanical application of a uniform formula.* To determine whether a breach avoids the contract as a whole one must consider what is necessary to work out reparation in varying conditions. \* \* \* The law will be able to offer appropriate relief 'where compensation is wilfully and contumaciously withheld.' " (Emphasis supplied.)

Two of the three cases cited by the Court in the body of the opinion do not hold what the majority opinion holds; they merely repeat in discussion "in needless generality" what the majority opinion decides, and, on the facts before them, found a breach justifying full damages. Only three of the cases cited in the footnote actually hold what the majority opinion holds; in the others the contract was held to be bilateral, or there was no breach.

It is small wonder, then, that the author of the annotation in 105 *A. L. R.* 460, 461, on anticipatory breach of a bilateral contract which has been fully performed on one side, says: "From his own examination of the cases the writer is unable to state upon what substantial reason the limitation in question may be said to rest. \* \* \* one would hesitate to say that the question under consideration in this annotation has, with the *possible* exception of money contracts, become at all settled. Yet the peculiar condition of the cases, as above outlined, the numerous assumptions and dicta, the apparent rulings on matters of anticipatory breach where in fact the breaches if any were actual, not anticipatory, have created at least an appearance of generally settled law." (Emphasis supplied.)

The Maryland authorities would tend to refute rather than sustain the view of the majority. In *Appleman v. Michael,* 43 Md. 269, 280, heavily relied on in the opinion, the holding was only that the suit there actually entered *was* one for the value of the goods sold and *was not* one for the breach of contract to execute the note that was to be given in payment for the goods. Judge Miller, in his discussion, noted that there were various cases wherein it had been held that the vendor could bring a special action on the case for damages for

breach of the contract to give the promised note "such damages as the jury might have thought reasonable for that breach of the contract." That is precisely what the plaintiffs sought in the case before us, damages for breach of the contract to give the note. In *Development Co. v. Bearing Co.,* 183 Md. 399, which was cited above, the breached contract had become wholly unilateral and damages were allowed equal to the purchase price of the property sold. Williston, again somewhat reluctantly, recognizes that the result reached in the *Development* case has been reached by a number of Courts. He says in 5 *Williston, Contracts,* Sec. 1471, that generally the price of property sold on credit cannot be recovered until the stipulated period of credit has expired, and continues: "Yet the failure to give the promised bill or note is surely a material breach, and the plaintiff's right to sue for the value of his goods has been recognized by some courts. Indeed, since the measure of damages in an action on the contract to give a bill or note is the price of the goods, a sum which was to be the amount of the note, and since the price of the goods is also generally the test of their value in an action based upon rescission, the seller may ordinarily recover the equivalent of restitution." And in Sec. 1411 he says: "Where a purchaser of goods promises to give a negotiable instrument payable in the future for them, though aside from the doctrine of anticipatory breach the seller has not generally been allowed to sue for the price of the goods immediately if the buyer failed to give the negotiable instrument as agreed, an action will lie for breach of the special promise to give the negotiable instrument, and in such an action the damages are fixed by the amount of the agreed instrument." This Court's acknowledgment in the *Appleman* case of the right to sue for damages for the failure to give a note as agreed and its decision in the *Development* case that such damages equal the purchase price of the property sold, are judicial recognition that Williston's statements, just quoted, have been up to now the law of Maryland.

It has certainly been the law of many States. See the annotation in 12 *L. R. A. (N. S.)* 180-181, 182, where the author says that: "* * * the vendor cannot recover on the

common count in assumpsit for goods sold and delivered until the credit has expired * * *. He may, nevertheless, proceed immediately for a breach of the special agreement to give the notes", and concludes: "The measure of damages in an action brought by a vendor upon the purchaser's failure to execute notes as stipulated has been held to be prima facie the amount of the note (*Aultman v. Daggs,* 50 Mo. App. 280), but is more commonly stated to be the agreed price of the goods * * *." See *Clarke v. Dill* (Pa.), 11 A. 82 ("When the defendant refused to give the notes as per contract, the plaintiff had either of two remedies: He might treat the contract as broken, and sue for damages; or, on the other hand, he might elect to regard the contract as subsisting, and sue for the installments as they became due.") *Kelly v. Pierce* (N. D.), 112 N. W. 995; *Standard Lumber Co. v. Deer Park Lumber Co.* (Wash.), 175 P. 578, 582 ("For the breach of an agreement to execute a promissory note payable in the future, damages may be recovered presently, and the amount for which the note was to be given will be the prima facie measure of such damages.") ; *Thomas Mfg. Co. v. Watson* (Me.), 27 A. 176 ("While the plaintiff could not maintain for this breach an action of indebitatus assumpsit for goods sold and delivered, it could maintain an action of special assumpsit, counting on the written contract and its breach. *Hunneman v. Grofton,* 10 Metc. (Mass.) 454, 459. The declaration in this action contains such a special count, and under it the plaintiffs are entitled to recover damages, which are to be assessed at the contract price, since the defendant cannot successfully dispute the full value of notes indorsed or signed by himself.")

The majority acknowledge the principle just discussed by noting that the failure to give a promised security for the delayed payment of the price of property constitutes a present breach that permits current recovery of the purchase price. The opinion attempts to avoid the applicability of the doctrine to the present case by saying: "A different rule applies when an agreement calls for the giving of a note *with security* from one that simply requires the giving of a note." The appellees argue that the same rule applies where the note to be given

is to be a negotiable note as where security is to be given, and I think it is clear that they are right. The appellants themselves, both in their original brief and in their reply brief, say: "* * * the exception to the general rule prohibiting full recovery upon the breach of an instalment contract is limited to cases where a negotiable note or security of another sort—and not the bare promise to pay money at a future time—is the agreed exchange." Williston recognizes what the appellants concede when he says in Sec. 1411 of his work cited: "Where as part of an executory contract there is a promise to give security, and breach of this promise involves breach of the entire contract, the measure of damages is properly the value of the security to the promisee, and this is prima facie the amount of the sum to be secured. Where the failure to give a *negotiable instrument* or security of a different kind involves the entire breach of a contract which would ultimately require payment of the sum for which the instrument was given or the security pledged, this measure of damages seems accurate * * *." (Emphasis supplied.) See *Hanna v. Mills,* 21 Wend. (N. Y.) 90; *Bowman v. Branson* (Mo.), 19 S. W. 634; *Bennett v. Dodgson* (Mont.), 284 P. 2d 990; *Bayne v. Morris,* 68 U. S. 97, 17 L. Ed. 495.

See, too, *American Mfg. Co. v. Klarquist* (Minn.), 50 N. W. 243, 244, where the action was for the recovery of the unpaid part of the purchase price of personal property. A part of this purchase price was to be evidenced by a promissory note and the defense was that the amount so evidenced was not yet due. The Court said in answer: "* * * it is enough to say that the defendants admit that they refused to give their note therefor, in accordance with the terms of the written agreement, and because of that refusal the plaintiff is entitled to recover damages, which, *prima facie,* are measured by the amount for which the note was to have been given. *Barron v. Mullin,* 21 Minn. 374." *Barron v. Mullin* was a case in which the defendant had failed to provide the security promised and the Court indicated that full recovery could be had because the failure to give the security was in itself failure of consideration. The point is that the Minnesota Court, like the appellants and like Williston, equate the

failure to give a promised note with the failure to give promised security.

Many of the cases, in sustaining the right to sue for breach of contract to give a note, do not distinguish between a negotiable and a non-negotiable note. No apparent reason why there should be a distinction suggests itself. If a negotiable note is requisite to support the action, it seems clear to me that the agreement in the case before us contemplated a negotiable note. Otherwise, there would be no point in giving a note at all because the terms of payment set out in the written agreement would have served as well as a non-negotiable note. Further, it has been held that when the word "note" is used, ordinarily a negotiable note is meant. *American National Bank v. Marshall* (Kan.), 253 P. 214; *Road Improvement District No. 4 v. Southern Trust Co.* (Ark.), 239 S. W. 8. The provision for extension of maturity of the contemplated note did not render it non-negotiable. The negotiable instrument law requires no more than that a negotiable instrument be payable "on demand, or at a fixed or determinable future time." Code, 1951, Art. 13, Sec. 21.

One more ground for immediate recovery of full damages should be available to the plaintiffs if there was no novation. The cases recognize that if there has been a failure to pay one instalment of a note or one month's rent under a lease, coupled with an absolute repudiation of the whole obligation to pay that instalment and all future instalments, there is not an anticipatory breach but an actual present breach and, in such cases, the only question is the amount of the damages presently recoverable. *Williston, Contracts,* Vol. 5, Sec. 1317, and the *Restatement, Contracts,* Sec. 317, recognize this rule, although Williston, and presumably the Restatement, attempt to limit it to breaches of bilateral contracts. Such a limitation has not always, or indeed generally, been recognized and I think no such limitation really exists. 4 *Corbin, Contracts,* Sec. 966, says that in a unilateral agreement failure to pay one instalment would not, without more, be a repudiation of the whole obligation to pay and adds that: "In other cases, however, accompanying the non-payment of one instalment there has been a definite repudiation of the

balance. Here, the cases that give judgment for damages for a partly anticipatory breach might well be followed." In *Sagamore Corp. v. Willcutt* (Conn.), 180 A. 464, there was a failure to pay an instalment of rent due under a lease, plus repudiation of the whole lease. The Court, assuming for the argument the validity of the "bare promise to pay money" rule, held that there was not merely an anticipatory breach but an actual breach plus repudiation, and that even though the contract had become unilateral and called only for the payment of money, all future sums due under the lease could be recovered. See also *In re Edgewood Park Junior College* (Conn.), 192 A. 561; *Hawkinson v. Johnston*, 122 F. 2d 724. In *Pollack v. Pollack* (Tex. Com. App.), 46 S. W. 2d 292, the plaintiff conveyed a business and property to the defendant in return for a promise to pay him $5,000 a year for life. After making a number of payments the defendant repudiated the obligation. The plaintiff was allowed to recover on the basis of life tables at the present value of $5,000 a year for the life expectancy. See also *Universal Life & Accident Ins. Co. v. Sanders* (Tex. Com. App.), 102 S. W. 2d 405.

Many questions of fact and law cry for decision by a trial court under the pleadings of this case before an appellate court should declare and apply the law. Many of them would obviate a decision on the point decided by the majority of the Court. If that decision ever had to be made after trial on the merits, the case should not be decided, as it was, by the "mechanical application of a uniform formula", but only after consideration of the contractual rights and obligations of the parties under their agreements and of whether their failure to give the note and to make the payments were such a frustration of their contract purposes, so wilfully and contumaciously made, as to require immediate payment of the purchase price properly discounted. I would remand the case for full trial.