**Michael D. PARKER, E. Scott Glacken, and Eric G. Meyers, Plaintiffs,**

v.

**Ronald E. MOITZFIELD and C. Richard Kibbey, Defendants.**

**Civ. A. No. 90–0185–A.**

United States District Court, E.D. Virginia, Alexandria Division.

March 30, 1990.

Martin J. Jaron, Jr., Ginsburg, Feldman & Bress, Washington, D.C., for plaintiffs.

Arnold S. Albert, Bradshaw Rost, Thomas, Hirsch & Albert, P.C., Washington, D.C., for defendants.

# MEMORANDUM OPINION

ELLIS, District Judge.

### Background

The dismissal motion before the Court in this diversity indemnity action places subject matter jurisdiction in question. In essence, the jurisdictional amount requirement is satisfied only if the complaint's allegations warrant plaintiffs' reliance on the anticipatory breach doctrine. For the reasons stated here, plaintiffs' invocation of this doctrine fails to state a viable claim. And because this plainly appears on the face of the complaint, the requisite $50,000 jurisdictional amount is not met.

The pertinent facts may be succinctly stated. The three plaintiffs are Maryland citizens and the two defendants are Virginia citizens. All of the parties are jointly and severally bound on a $300,000 Sovran Bank note dated July 15, 1988.[1] The note requires monthly installment payments of $5000, plus accrued interest, with the remaining balance of the note due and payable on July 15, 1990. The note further provides that in the event of default on any of the installment payments, the entire principal balance, together with all accrued and unpaid interest and other applicable fees and costs, shall be immediately due and payable at Sovran Bank's option.

Between 1987 and 1989, the parties entered into various agreements designed to restructure their ownership and debt obligations. Among these was an April 12, 1989 agreement in which defendants agreed to indemnify and hold plaintiffs harmless with respect to the Sovran Bank note.[2] As a consequence of this indemnity agreement, defendants became, in effect, the primary obligors on the note. According to the complaint,[3] defendants failed to

---

1. The complex business relations underlying the note and the parties' other transactions are not described here because they are not germane to the resolution of the issues presented.

2. The indemnity provision, which appears in Section 5(a) of the April 12, 1989 agreement, states as follows:

   Moitzfield and Kibbey hereby indemnify and agree to defend and hold harmless Parker, Glacken and Meyers and their successors, representatives, heirs, employees and assigns from and against any and all claims, damages, losses and liabilities, including reasonable attorneys' fees, which may at any time be asserted against or suffered by Parker, Glacken, Meyers and/or their successors, representatives, heirs and assigns in connection with the Sovran Note....

3. The complaint's allegations are accepted as true for purposes of resolving a threshold challenge under Rule 12(b), Fed.R.Civ.P. *See, e.g.,*

make the monthly installment note payments to Sovran Bank. The complaint further alleges that Moitzfield, on behalf of both defendants, informed plaintiffs that defendants did not intend to perform under the indemnity agreement. Plaintiffs apparently sought to forestall a note default for a short period of time by paying Sovran Bank a total of $27,721.91. The note is now in default, but Sovran Bank, for whatever reason, has not elected to accelerate the remaining installment payments. A final balloon payment for the entire remaining balance is due some four months hence, on July 15, 1990.

On these alleged facts, plaintiffs have brought a three count diversity action. In the first count, plaintiffs seek recovery of the $27,721.91 on the basis of the indemnity agreement. By itself, this count does not meet the jurisdictional amount. The same conclusion holds with respect to the second count, which seeks specific performance of the indemnity agreement pursuant to a provision of that agreement expressly permitting such a remedy.[4] Because only $27,-721.91 is currently due on the indemnity agreement, the specific performance count also fails the jurisdictional amount requirement. Recognizing this, plaintiffs rely on the complaint's third count to meet the requisite jurisdictional amount. That count apparently seeks the full amount ("not less than $220,000") that is due on the note under an anticipatory breach theory. Whether this count saves the complaint from dismissal for lack of subject matter jurisdiction depends on two questions. *First*, does the claim for anticipatory breach of the indemnity agreement state a valid claim upon which relief can be granted? *Second*, if that count fails to state a valid claim, does the dismissal of the claim eliminate the basis for diversity jurisdiction over the surviving counts? Each of these questions is considered in turn.

*Papasan v. Allain*, 478 U.S. 265, 282, 106 S.Ct. 2932, 2942, 92 L.Ed.2d 209 (1986).

**4.** Section 8 of the April 12, 1989 agreement provides, in pertinent part, as follows:

*Analysis*

### A. The Anticipatory Breach Claim

The doctrine of anticipatory breach, or more precisely, of anticipatory repudiation, is well established in virtually every jurisdiction. *See* 17 Am.Jur.2d *Contracts* §§ 448–457 (1964). It rests on the sensible notion that an anticipatory repudiation or breach should excuse the non-breaching party from further performance and entitle that party to treat the entire contract as broken and to obtain an appropriate remedy. Were the law otherwise, the result would be inefficiency and unfairness. Nearly as well established, but not so free of controversy, is the proposition that the doctrine does not apply to unilateral contracts or to contracts the complaining party has fully performed. *See, e.g., Smyth v. United States*, 302 U.S. 329, 58 S.Ct. 248, 82 L.Ed. 294 (1937); *Merrick v. Allstate Ins. Co.*, 349 F.2d 279 (8th Cir.), *cert. denied*, 382 U.S. 957, 86 S.Ct. 435, 15 L.Ed.2d 361 (1965); *City of Hampton v. United States*, 218 F.2d 401 (4th Cir.1955); *Bertolet v. Burke*, 295 F.Supp. 1176 (D.V.I.1969); *Minor v. Minor*, 184 Cal.App.2d 118, 7 Cal.Rptr. 455 (1960); *Phelps v. Herro*, 215 Md. 223, 137 A.2d 159 (1957); *see also* Restatement (Second) of Contracts § 253 comment c (1981); Annotation, *Doctrine of Anticipatory Breach as Applicable to a Contract Which the Complaining Party Has Fully Performed*, 105 A.L.R. 460 (1936). The question presented, therefore, is whether this exception to the doctrine's application applies in this case to invalidate the complaint's third count.

First, the governing law must be identified. Paragraph 9(g) of the agreement provides that District of Columbia law governs. There is, apparently, no pertinent District of Columbia law. In these circumstances, since the District derived its common law from Maryland, District of Columbia courts typically regard Maryland law as persuasive. *See Tydings v. Tyd-*

If any of the parties breach this Agreement ..., in addition to all other available remedies, the nonbreaching party shall be entitled to enforce this Agreement by a decree of specific performance.

*ings,* 567 A.2d 886, 893 (1989). And, as it happens, Maryland's common law includes the principle that "the doctrine of anticipatory breach of contract has no application to money contracts." *Phelps v. Herro,* 215 Md. 223, 137 A.2d 159, 164 (1957).[5] *Phelps* is the leading Maryland case, and its facts bear a significant resemblance to those at bar. There, the parties entered into a contract for the sale over time of fractional interests in realty and corporate stock. Plaintiffs performed fully. But after part performance, defendant-purchasers notified the plaintiff-sellers that they would not pay the balance, thereby demonstrating a "definite and specific repudiation of the contract." 137 A.2d at 162. On these facts, the Maryland Court of Appeals held that the doctrine of anticipatory repudiation did not apply and, therefore, that the action had been prematurely brought. The same result obtains here for the same reason. Here, as in *Phelps,* the agreement in issue, the indemnity agreement, is essentially a money contract, "pure and simple, where one party has fully performed his undertaking, and all that remains for the opposite party to do is to pay a certain sum of money at a certain time or times." 137 A.2d at 164. Thus, here, as in *Phelps,* the doctrine of anticipatory breach does not apply and Count III accordingly fails.[6] As Sovran Bank has not exercised its option to accelerate the remaining debt, it is premature to sue now for the total amount that may become due under the indemnity agreement. Plaintiffs in these circumstances have the option of suing now in state court for the smaller sum currently

due under the indemnity agreement, or waiting to bring suit in federal court for the larger sum when that sum becomes due and payable either by the passage of time or because Sovran Bank exercises its option to accelerate the debt. For now, however, plaintiffs' anticipatory breach claim fails on the face of the complaint.

B. *Subject Matter Jurisdiction*

▮▮▮ The complaint relies solely on Count III to meet the requisite amount in controversy. Since that count fails on the face of the complaint, the question arises whether the complaint must now be dismissed for lack of subject matter jurisdiction. The general rule is that amounts in controversy are to be determined as of the time an action is commenced and cannot be destroyed by subsequent events. *See St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289–90, 58 S.Ct. 586, 590–91, 82 L.Ed. 845 (1938); 14A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3702 (2d ed. 1985). But an important exception to this rule occurs "where, upon the face of [plaintiff's] own pleadings, it is not legally possible for him to recover the jurisdictional amount." *Smithers v. Smith,* 204 U.S. 632, 642, 27 S.Ct. 297, 299, 51 L.Ed. 656 (1907); *see also Red Cab Co.,* 303 U.S. at 289, 58 S.Ct. at 590. Were the law otherwise, parties would be able to obtain federal jurisdiction for claims involving less than $50,000 simply by deliberately alleging a facially defective claim for an amount greater than $50,-000. No jurisdictional rule should coun-

---

5. Maryland, in this respect, is consistent with the vast majority of jurisdictions. *See Bertolet,* 295 F.Supp. at 1178 ("[o]ur research reveals that the case law is in overwhelming concurrence with the [Restatement position]," holding that the anticipatory breach doctrine does not apply in cases involving unilateral contracts).

6. Plaintiffs seek to avoid the effect of *Phelps* by citing *Precision Dev. Co. v. Fast Bearing Co.,* 183 Md. 399, 37 A.2d 905 (1944) as the apposite Maryland authority. That decision was distinguished in *Phelps* and is distinguishable here. In *Precision,* the non-breaching party was concerned that the breaching party would not take steps to preserve the property that served as security for the installment debt. Given this, the court permitted plaintiff to rely on the anti-

cipatory breach doctrine as a means of insuring preservation of its security interest. No such factor is operative here or in *Phelps.*

Alternatively, plaintiffs argue that *Phelps* is wrongly decided, as reflected in the dissent in that case and in 4A Corbin, *Corbin on Contracts* § 963 (Supp.1971). Neither source persuades this Court that the doctrine of anticipatory repudiation applies where, as here, the non-breaching party has fully performed and nothing remains to be done under the indemnity agreement other than the payment of money by the breaching party on the occurrence of some future event. In such circumstances, ample authority supports the conclusion reached here. *See* cases cited *supra.*

tenance or invite such a ploy. Accordingly, well-reasoned authorities recognize that dismissal of facially invalid claims is an exception to the general rule that jurisdiction is not destroyed by the occurrence of events subsequent to the filing of the complaint. For in reality, the absence of jurisdiction over facially invalid claims is not caused by any subsequent event; jurisdiction never actually exists when the facial defect prevents the claim from satisfying the requisite jurisdictional amount. As the anticipatory breach claim is facially defective, plaintiffs here cannot rely on it to claim federal diversity jurisdiction over the smaller claims. *See Wiggins v. North American Equitable Life Assur. Co.*, 644 F.2d 1014, 1018 (4th Cir.1981) (where compensatory damage claim was insufficient, standing alone, to satisfy the statutory jurisdictional amount, and where state law precluded any punitive damage claim, federal courts lacked diversity jurisdiction to adjudicate case). This action must therefore be dismissed for lack of subject matter jurisdiction.

An appropriate order has issued.